IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 19, 2009

## ALEJANDRO AVILA-SALAZAR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-A-32     Mark J. Fishburn, Judge**

_____

**No. M2008-02120-CCA-R3-PC - Filed September 22, 2009**

_____

The Petitioner, Alejandro Avila-Salazar, pleaded guilty on September 6, 2006, to one count of second degree murder and one count of attempted aggravated rape. He was sentenced to serve forty years for the second degree murder conviction and twelve years for the attempted aggravated rape conviction, those sentences to be served concurrently at 100%. He later filed a petition for post-conviction relief alleging that his guilty plea was not knowingly and intelligently entered because he received ineffective assistance of counsel. A post-conviction hearing was held on March 10, 2008, after which the post-conviction court denied the Petitioner relief. In this appeal, the Petitioner contends that the post-conviction court erred in holding that he received the effective assistance of counsel and that he entered his guilty plea knowingly and intelligently. After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Alejandro Avila-Salazar.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

Testimony at the Petitioner's post-conviction hearing established that the charges to which the Petitioner pleaded guilty arose from an incident in which he and a co-defendant raped and killed

a woman in a laundromat. The Petitioner testified that his court-appointed attorney ("trial counsel") represented him throughout the plea process.

The Petitioner, who had no previous experience in the legal system, testified that trial counsel met with him only three times. Each meeting occurred in jail. The Petitioner, who is not fluent in English, communicated with trial counsel using an interpreter who, he said, was not very skilled in Spanish. The Petitioner said trial counsel assured him he would receive only three to four years in jail, when in fact the Petitioner's plea agreement offered an effective sentence of forty years. The Petitioner also alleged that trial counsel did not discuss evidence with him, allow him to review discovery materials provided by the State, or tell him that the State had a surveillance video of him leaving the laundromat at which the crime occurred. Trial counsel also did not tell the Petitioner exactly what would happen if he went to trial and lost, advising only that the Petitioner would spend the rest of his life in prison. The Petitioner said he desperately wanted to go to trial, but that trial counsel resisted and called the Petitioner "a stupid young man." The Petitioner also asserted that trial counsel never tried to suppress the statement he had made to police in which he admitted choking the victim with his belt while attempting to rape her.

Although trial counsel told the Petitioner he was allowed to speak at his plea acceptance hearing, the Petitioner testified that trial counsel instructed him not to say anything except "yes" to the judge's questions. When the judge said that the Petitioner would be sentenced to forty years, the Petitioner turned to trial counsel for clarification. Trial counsel told him not to worry and that he would receive three to four years.

On cross-examination, the Petitioner confirmed that he had, at his plea acceptance hearing, agreed that he understood he would be sentenced to forty years. He also had affirmed that he had no complaints about trial counsel at that time, that he understood the possible sentences for the offenses with which he had been charged, and that he understood the rights he was waiving by declining to go to trial. The Petitioner also confirmed that he had asked his original lawyer, an assistant public defender, to withdraw because she was "not working for him," but never complained about trial counsel or his interpreter. When asked at his post-conviction hearing why he believed trial counsel was ineffective, the Petitioner said, "As a defense attorney he should have taken at least one charge from me." The Petitioner said he would not have pleaded guilty if he and trial counsel had met more often or if he had understood his plea agreement or his legal options.

Trial counsel testified for the State at the post-conviction hearing. He said that he and the Petitioner met four times in jail and at least six more times in the courthouse. Trial counsel brought an interpreter to every meeting after the first one. The case involved "massive discovery," including audiotapes, a video, police reports, and pictures of the crime scene. Trial counsel reviewed these items with the Petitioner a number of times, including the Petitioner's inculpatory statement to police. The two did not watch the surveillance video because the Petitioner said he had already seen it.

The Petitioner's only defense was that his co-defendant was responsible; trial counsel noted, however, that the Petitioner's statement to police was contrary to this defense. The Petitioner wanted to go to trial, however. Although trial counsel advised him against it, he told the Petitioner he would try the case. Trial counsel discussed the State's offer with the Petitioner many times, relaying that the State offered a forty-year sentence at 100%, and that the Petitioner might get a maximum of 15% of that sentence reduced for good behavior. He told the Petitioner that he would receive fifty-one years if convicted of felony murder. He also discussed lesser-included offenses, but did not believe the Petitioner would be convicted of a lesser-included offense.

Before his last meeting with the Petitioner, trial counsel had prepared to set the case for trial. During the meeting, trial counsel reiterated his opinion that the Petitioner should not go to trial. The Petitioner had tears in his eyes and agreed to plead guilty because he did not want to spend the rest of his life in jail. Trial counsel confirmed that the forty-year sentence appeared on the plea petition the Petitioner signed.

Trial counsel said he never told the Petitioner he would receive three to four years in jail. He also never told the Petitioner not to say anything but "yes" at his plea acceptance hearing. Trial counsel also confirmed that he had filed a motion to suppress the Petitioner's statement to police but that the motion was denied following a hearing. The Petitioner never mentioned any problem understanding the interpreter.

The post-conviction court denied the Petitioner relief. This appeal followed.

**Analysis**

The Petitioner contends that his guilty plea was not voluntarily and intelligently entered because he received ineffective assistance of counsel. To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance of counsel necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. at 56 (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

We initially conclude that the evidence does not preponderate against the post-conviction court's obvious finding that trial counsel's testimony was more credible than the Petitioner's. The Petitioner made a number of claims that may have been seen as lacking credibility, given his

-4-

satisfaction with trial counsel and his interpreter at the time of his plea, including his assertions that he expected only a three to four year sentence and could not understand his interpreter. The Petitioner also asserted at his post-conviction hearing that the State lacked evidence against him, while acknowledging his inculpatory statement, video evidence, and the existence of a witness who confirmed his presence at the laundromat.

Testimony at the post-conviction hearing did not establish that trial counsel's performance was below the standard of "reasonableness." Strickland, 466 U.S. at 688. Trial counsel reviewed the strong evidence against the Petitioner, explained the charged offenses and possible penalties, and advised the Petitioner of the likely negative result of proceeding to trial. Under these circumstances, the evidence does not preponderate against the post-conviction court's finding that the Petitioner knowingly and voluntarily entered his guilty plea.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
DAVID H. WELLES, JUDGE